SCANNED at _____ & emailed on
11/20/23 by _MdL_ - _75_ pages.
(date)    (initials)    (num)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

LARRY WARREN

v.

DENNIS REAGLE, CHLOE WARGNY,
CHRISTINA CONYERS, ISAAC RANDOLPH,
MICHELLE RAINS, PENNY EDEN, EMILY
KNOTTS, NANCY SPURGIN, JENNIFER
RINEHART, DAVID CHAPPELL,
KRISTINA CARTER, CENTURION HEALTH
SERVICES, INC., JOHN MERSHON,
MELISSA BAGIENSKI, LISA HAMBLEN
DANIEL STASIAK, KRIS PRYOR, JASON
CARTER, EUNICE ADETURO, SHERIFF
AGBOOLA, ABIMBOLA EHIMARE,
FELICIA SHELBY,

      Defendant's

Case No. 1:23-cv-02093-RLY-TAB
(To be issued by the Clerk of court)

**FILED**

**11/20/2023**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

PRISONER COMPLAINT 42 U.S.C. 1983 AND
DEMAND FOR JURY TRIAL

VERIFIED COMPLAINT

I. INTRODUCTION

1.  Plaintiff, Larry Warren, a State Prisoner, alleging
violations of his constitutional rights of Eighth Amendment
"Cruel and unusual punishment", First Amendment,

"Retaliation" Claims, Eighth Amendment "deliberate indifference" claims, Eighth Amendment, "conditions of confinement" claims, Fourteenth Amendment, "due process violations," Monell / "supervisor liability" claims, State Law claims, "I.I.E.D / Emotional Distress," "Conspiracy," "Negligence," "Failure to protect," and is seeking injunctive relief and monetary damages.

## II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1983 in that this is a civil action arising under the Constitution of the United States of America.

## III. PARTIES
### A. PLAINTIFF

1. Plaintiff, Larry Warren, pro-se, at all times relevant was confined by the Indiana Department of Corrections at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064

### B. DEFENDANTS
#### i. STATE DEFENDANTS

1. Defendant, Dennis Reagle, Warden, at all times relevant to this complaint in his individual capacity is employed by Indiana Department of Corrections, and is the Warden of the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

2. Defendant, Chloe Wargny, Administrative Assistant, at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections and is the Legal Assistant of the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

3. Defendant, Christina Conyers, Grievance Supervisor, Grievance Specialist~ at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections and is the Grievance Supervisor of the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton Indiana, 46064.

4. Defendant, Isaac Randolph, Final reviewing grievance specialist, at all times relevant to this complaint in his individual capacity is employed by Indiana Department of Corrections, and is the Final Authority reviewing grievance specialist over IDOC, 302 W. Washington Street, Indianapolis, Indiana, 46204.

5. Defendant, Michelle Rains, former Administrative Assistant, at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections and was the Administrative Assistant of the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

6. Defendant, Penny Eden, Administrative Assistant, at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections, and is the Administrative Assistant of the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

7. Defendant, Emily Knotts, Case Manager, at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections and is the Case Manager for the IRT complex, 4490 W. Reformatory Road, Pendleton Indiana, 46064.

8. Defendant, Nancy Spurgin, Case Manager, at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections, and is the Case Manager for L-dorm at Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

9. Defendant, Jennifer Rinehart, Sanitation Supervisor, at all times relevant to this complaint in her individual capacity is employed by Indiana Department of Corrections and is the Sanitation Supervisor, Sgt., at Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

10. Defendant, David Chappell, Corrections Officer, at all times relevant to this complaint in his individual capacity is employed by Indiana Department of Corrections and is the Corrections Officer at the Pendleton Correctional Facility, 4490 W. Reformatory, Pendleton, Indiana, 46064.

11. Defendant, Kristina Carter, former Correctional Officer, at all times relevant to this complaint in her individual capacity, was employed by Indiana Department of Corrections as Correctional Officer at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

4.

## ii  MEDICAL DEFENDANTS

1. Defendant, Centurion Health Services, LLC., at all times relevant to this complaint in its _____ individual capacity is under contract with the Indiana Department of Corrections since July, 2021 to provide adequate medical care and treatment to inmates incarcerated in various correctional facilities in the State of Indiana, including the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

2. Defendant John Mershon, Medical Director, at all times relevant to this complaint in his individual capacity was employed by Centurion Health Services, LLC., and was responsible for the medical care and providing adequate health care to Plaintiff at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana 46064.

3. Defendant, Melissa Bagienski, Former Health Services Assistant Administrator, at all times relevant to this complaint in her individual capacity was employed by Centurion Health Services, LLC, and was responsible for answering, health care forms, request forms and investigting complaints and grievance forms from inmates so to ensure proper medical care is provided to the inmates at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

4. Defendant, Lisa Hamblen, Health Services Administrator, at all times relevant to this complaint in her individual capacity is employed Centurion Health Services, LLC., and is responsible for the answering inmates Health care forms, request slips, and

investigating grievance complaints against Centurion and its staff, to ensure proper care is being provided at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana, 46064.

5. Defendant, Daniel Stasick, RN and Infectious Disease Controller, at all times relevant to this complaint in her individual capacity was employed by Centurion Health Services, LLC., and is responsible for the Medical Care of Plaintiff at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton Indiana, 46064.

6. Defendant, Kris Pryor, Registered Nurse, at all times relevant to this complaint in her individual capacity is employed by Centurion Health Services LLC at the IRT complex behind Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton Indiana, 46064 and is responsible for the medical care to Plaintiff and other inmates.

7. Defendant, Jason Carter, Medical Director, at all times relevant to this complaint in his individual capacity is employed by Centurion Health Services, and is responsible for the medical care and providing proper medical care to Plaintiff at Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana 46064.

8. Defendant, Eunice Adeturo, Registered Nurse, at all times relevant to this complaint in her individual capacity is employed by Centurion Health Services, and is responsible for the medical care to Plaintiff at Pendleton Correctional Facility,

4490 W. Reformatory Road, Pendleton, Indiana, 46064.

9. Defendant, Sheriff Agbeola, Registered Nurse, at all times relevant to this complaint in her individual capacity is employed by Centurion Health Services, and is responsible for the medical care to Plaintiff at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana 46064.

10. Defendant, Abimbola Ehimare, Registered Nurse, at all times relevant to this complaint in her individual capacity is employed by Centurion Health Services, and is responsible for the medical care to Plaintiff at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana 46064.

## IV. EXHAUSTION OF AVAILABLE REMEDIES

3. Plaintiff has exhausted his administrative remedies before filing this complaint, and or exhausted such remedies as to fulfill his burden, Ross v. Blake, 136 S. Ct. 1850, 1860; 195 L. Ed 2d. 117 (2016) U.S. Lexis 3614.

4. From December 13, 2021, through October 12, 2023, the Plaintiff has filed twenty-nine (29) seperate grievances related documents to the issues raised in this complaint.

5. December 13, 2021, Plaintiff filed a grievance for unsanitary conditions in Plaintiff's housing unit K-4 dorm. Grievance Supervisor/Specialist Defendant, Conyers returns grievance citing, "Plaintiff has exhausted his administrative remedies.

6. January 24, 2022, Plaintiff files a grievance #138865, against Warden and Defendant Reagle, for conditions of confinement and Plaintiff being exposed to and testing positive for Covid-19. Final Denial May 27, 2022. Defendant, Randolph denied it on that date.

7. January 25, 2022, Plaintiff files a grievance against Defendant, Nurse, Pryor for failing to provide any medical care. Defendant Conyers failed to respond to this grievance.

8. January 25, 2022, Plaintiff files a grievance against Defendant Nurse, Adeturo for failing to provide any medical care. Defendant Conyers failed to respond to this grievance.

9. January 27, 2022, Plaintiff files a grievance against Defendant Centurion Health Services, for failing to provide and delay serious medical care to Plaintiff. Final Denial, may 31, 2022. Defendant Randolph denied it on that date.

10. February 8, 2022, Plaintiff files a grievance against Defendant Nurse, Pryor for retaliation against Plaintiff. Final Denial May 31, 2022. Defendant Randolph denied it on that date.

11. June 3, 2022, Plaintiff files a grievance against Defendant, Nurse, Adeturo for refusal to give medications to Plaintiff and for administering medications with perfume scent on them. Grievance Specialist and Defendant Conyers failed to respond to this grievance.

12. June 13, 2022, Plaintiff files a grievance against Defendant Nurse, Staziak for falsifying Plaintiffs medical records. Defendant Conyers failed to respond to this grievance.

13. June 20, 2022, Plaintiff files a grievance against Defendant, Nurse, Agbcola for denying medical care for Plaintiff serious medical condition. Final denial January 18, 2023.

14. January 12, 2022, Plaintiff files a grievance against Defendant HSA Assistant, Basicwski for falsifying health care form #359567, when she stated that "another disease Legionnaires was gone/fixed." Defendant Conyers failed to respond to this grievance.

15. August 8, 2022, Plaintiff files a grievance against Defendant, M.D. Mershon for denying medical care of Nebulizer treatments. Defendant Conyers returned this grievance.

16. August 18, 2022, Plaintiff files a grievance against Defendant Centurion Health Services staff for retaliating against Plaintiff when they denied his hemorrhoid medications for 59 days. Defendant Conyers returned this grievance.

17. August 22, 2022, Plaintiff files a grievance against Defendant Centurion Health Services staff for falsifying health care form #281380, when it stated Plaintiff "refused his PFT test." He did not. Defendant Conyers returned this grievance.

18. August 27, 2022, Plaintiff files a grievance against Defendant Nurse, Stasiak, for falsifying Plaintiffs medical records. Defendant Conyers returned this grievance.

19. August 31, 2022, Plaintiff files a grievance against Defendant Nurse, Stasiak for retaliating against Plaintiff for filing prior

grievances against Stasiak. Defendant Conyers returned Plaintiffs grievance.

20. September 7, 2022, Plaintiff files a grievance against Defendant M.D. mershon, for Falsifying Plaintiffs medical records. Defendant Conyers returns Plaintiffs grievance.

21. September 16, 2022, Plaintiff files grievance #148001, against Defendant, Nurse Shelby, for Falsifying Plaintiffs medical records. Defendant Conyers blocks this grievance, retaliates, and fails to respond.

22. September 26, 2022, Plaintiff files grievance #146683, against Defendant, Nurse, Stasiak for falsifying Plaintiffs medical records. Final denial January 18, 2023.

23. September 27, 2022, Plaintiff files grievance #146680, against Defendant, M.D. mershon for refusing to provide medical care to Plaintiff. Final Denial January 18, 2023).

24. October 10, 2022, Plaintiff files grievance #148000, against Defendant, Nurse, Shelby for falsifying Plaintiffs medical record. Defendant Conyers, blocks this grievance.

25. November 22, 2022, Plaintiff files a grievance against Defendant M.D. mershon for falsifying Plaintiffs medical records and refusing to treat Plaintiffs serious medical condition Covid-19. Defendant Conyers blocked this grievance from moving forward.

26. December 9, 2022, Plaintiff files a grievance #148829, against Defendant M.D. mershon for delaying medical treatment.

27. December 16, 2022, Plaintiff files grievance against Defendant Nurse, Ehimare for falsifying plaintiff's medical records. Defendant Conyers blocked this grievance from moving forward.

28. December 19, 2022, Plaintiff files grievance against Defendant HSA, Hamblen for threatening Plaintiff with a conduct report for abusing health care forms. Defendant Conyers would block this grievance from moving forward.

29. April 2, 2023, Plaintiff files grievance against Defendant, HSA, Hamblen for falsly charging him $20.00 for medical services that he should have not been charged for. Defendant, Conyers did not allow this grievance from moving forward. Grievance #23-146110. After review of grievance it did have a final denial on July 27, 2023

30. January 16, 2023, Plaintiff files grievance #151332, against Defendant, HSA, Hamblen for failing to respond to Plaintiffs Health care forms while she was on leave. Hamblen failed to leave the forms with another Nurse for processing. Final Denial May 11, 2023.

31. September 11, 2023, Plaintiff files grievance against Defendant, Sgt. Rinehart, sanitation Supervisor, when she came blasting in Plaintiff's housing, unit K-4 dorm on September 6, 2023 and retaliated against Plaintiff when she stated, the Warden is tired of all the grievances, and Lawsuits coming out of K4 dorm, and she then yelled, "who's the Fucking detail in here". The grievance office blocked this grievance from moving forward. The grievance office blocked this grievance from advancing.

11.

32. September 20, 2023, Plaintiff filed a grievance against Defendant, HSA, Hamblen for blocking several health care forms from moving forward. This is retaliation and denying Plaintiff serious medical treatment. The grievance office kept this grievance from moving forward

33. October 12, 2023, Plaintiff Files a grievance against Defendant, HSA, Hamblen for denying serious medical treatment for six (6) weeks. The grievance office kept this grievance from moving forward.

34. The Plaintiff has exhausted his state Remedies / Indiana Department of Corrections grievance procedures and or the remedies that were unavailable on all issues concerning this complaint.

## V. FACTUAL ALLEGATIONS

35. Defendant's Reagle and Centurion Health Services, LLC. had a duty to protect Plaintiff and other inmates at the Pendleton Correctional Facility from exposure to infectious diseases and they failed to maintain adequate Covid-19 prevention procedures

36. Defendant Reagle Knowingly exposed Plaintiff and other inmates to a infectious disease Covid-19, when he turned a blind eye and a deaf ear to a Known problem that would indicate total unconcern for Plaintiff, and other inmates health and welfare. This is borderline criminal behavior

37. In late 2021, Pendleton Correctional Facility saw a large spike in Covid-19 cases. During this time J and H cell houses would be placed on lockdown and quarantined for two (2) weeks at a time. The large spike in Covid-19 cases eventually lead to a major outbreak of Covid-19 cases throughout the facility as well as a total lockdown and quarantine of the entire facility January 11, 2022.

38. Plaintiff tested positive for Covid-19 on January 13, 2022. The situation became worst with Covid-19 cases running ramped that on January 18, 2022, Defendant Reagle ordered all staff members to stop testing for Covid-19.

39. Late November and early December all IDOC and CDC policies, procedures and preventative measures came to a screeching halt when it was announced, First through local news channels that the Pendleton Correctional Facility was experiencing a Legionnaire's Outbreak. Plaintiff will address his Legionnaires injuries in a separate suit.

40. This would end due to Defendant Reagles actions, No more soap being passed out, No more PPE such as masks being passed out, not having access to the only place to receive sanitizer for your hands was when going through the Chow hall and life at Pendleton would only get worst.

41. There would be No more Covid-19 preventative measures again after December 1, 2022, when PCF announced there was a Legionnaires outbreak, Defendant Reagle ordered all water in the two (2) showers of Plaintiff's housing

unit, K-4 dorm to be closed off for several days as the shower pipes were contaminated with legionella bacteria. Thus, leaving Plaintiff and others smelling of foul odors and being forced to live in unsanitary conditions. The hot water from all five (5) sinks in Plaintiff's housing unit would be shut off for over three (3) months. With no hot water, soap and hand sanitizers, Plaintiff and the other 35 men could not properly sanitize themselfs and their eating utensils. See, www.cdc.gov/handwashing/show-me-the-science-hand-sanitizer.html

42. With legionnaires outbreak and a storm of Covid-19 cases sweeping through the facility all visits, guests from the outside were permitted inside for Count Letters, Count letters for inmates to include Church/Religious services all continued through the month of December and early January, 2022 as though everything was running normal. Inmates would be allowed to intermingle amongst each other from various housing units while being on different Count letters such as Religious services and Shakesphere to name a couple. This would include Plaintiff.

43. Basically, this left the inmates to having their chances increased by being exposed to Covid-19 virus. Reagle would stop all staff temperature checks, and questioning staff for any Covid-19 symptoms as they would report for work during this time.

44. Also during this time, the sanitation department led by Defendant, J. Rinehart was only handing out to K-dorm

cleaning supplies 25% of the time and other times there would be no chemicals to clean with. This meant days would go by with no chemicals or cleaning supplies to scrub the shower, urinal, toilets, sinks and floors. This Neglect led to an increase of Covid-19 infections in Plaintiffs housing unit to include Plaintiff, as well as an increase of huge cockroaches, spiders and gnats. Plaintiff would also sustain a very serious and painful feet infections from an unsanitary shower area. See, www.cdc.gov/norovirus/about/prevention.html. also see, www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html.

45. This outbreak of Covid-19 spread from December of 2021 through January of 2022, could have been prevented but Defendant, Reagles poor decisions led to a total melt down and Neglect as he took one band-aid and placed it over another band-aid, while totally disregarding the safety and welfare of Plaintiff, and other inmates as well as violating any and all Covid-19, CDC recommendations, IDOC policies, procedures, protocols, State and Federal Laws.

46. Plaintiff would experience Legionnaires disease symptoms in November and December of 2021. On January 9, 2022, Plaintiff would submit a healthcare form as he was ill and complaining of serious painful respiratory pain and other Covid-19 symptoms.

47. Plaintiff would not be seen for a serious illness til several days later on January 13, 2022, where he and

several other inmates from his housing unit would test positive for the Corona virus via way of swab up the nose. No treatment for Plaintiff's illness or pain was ever administered or addressed at that time. One of the inmates who was tested at the same time, was sent back to his housing unit because initially he was told he tested negative. 2 weeks later Centurion told the inmate that he was actually positive, in which this grave error allowed this inmate to infect others in K-4 dorm.

48. When Plaintiff and a hand full of others were led off to the isolation unit after testing positive for the Covid-19 virus January 13, 2022, it appeared that the building being used for the first time of Covid-19 quarantine called C-1 building of the IRT complex, (another facility) was a place to just throw the men in and lock the door without ever providing any medical care and treatment for the men. There would be no medical care nor follow-up treatments for the men and Plaintiff for the entire fifteen (15) days Plaintiff remained in Isolation. Because it was a new location for Covid-19 patients, it appeared that nobody knew how to do anything. No protocols, policies and procedures were followed by IDOC Defendant's or Centurion Health Services Defendants. Plaintiff while laying very sick in his cell would be forced to clean his cell and walk downstairs to get ice because there was no Bio team nor detail to do these things.

49. Prior to Plaintiff's isolation on January 13, 2022, and during his fifteen (15) days in isolation he would

16.

experience symptoms such as pneumonia, shortness of breath, respiratory issues, coughing up mucus and blood, nose running, fatigue, anxiety, lungs burning, kidney pain, throat pain, mental confusion, depression and exacerbated PTSD

50. Centurion Health Services, and IDOC staff was fully aware that the Plaintiff suffered from underline conditions such as diabetes, hypertension, high blood pressure, enlarged prostate, nodules on his lungs, prior legionella symptoms with past diagnosis of Tuberculosis and Lymes disease and taking Prozac to help control his PTSD, Anxiety and Depression.

51. However, none of that mattered as Defendant Centurion Health Services, LLC, and it's staff failed to provide any medical attention for several days leading up to Plaintiff testing positive for Covid-19 on January 13, 2022, during his fifteen (15) days in isolation, and another several weeks after isolation until finally he was seen forty (40) days later after he filed his first healthcare form on February 16, 2022. During these forty (40) days of hell and torture, Plaintiff submitted multiple health care forms, requests forms had verbal conversations with all staff/Defendants, sent letters to IDoc and Centurion Health Services requesting medical attention. Only to be denied any medical help for forty (40) days or to be told by former HSA Asst Defendant, Bagienski "to just tough it out and order Tylenol off commissary". See www.cdc.gov/coronvirus/2019-ncov/need-precations/people-with-medical-conditions.html.

52. Listed below are a few IDOC policies and procedures that Defendants of IDOC and Centurion Health Services violated that led to Plaintiff's constitutional rights being violated, and injuries.

a. IDOC Covid-19 Preparedness Plan, January 18, 2022;

b. ED, #22-02 Pandemic Preparedness, January 18, 2022;

c. AP, 01-02-101 Health Services;

d. AP, 00-02-301 Offender Grievance Process;

e. ED, 34 "Access to Health Care Procedures;

f. ED, 20-20 Pandemic Response, March 16, 2021;

g. ED, 20-48 Covid-19 on Influenza Plans, September 28, 2021;

h. ED, 20-55 Covid-19 Preparedness and Response Plan, November 1, 2020;

53. January 11, 2022, around 1300 hrs, Defendant Reagle initiates a full Lockdown due to the massive outbreak of Covid-19.

54. January 13, 2022, Plaintiff tests positive for Covid-19, and is transferred to B-1 building of IRt which is a new location for Covid-19 patients.

55. Plaintiff initially was placed in a cell that had a broken heater. Later that day he would be placed in a cell that was missing a window paign. Plaintiff was forced to chalk the window with toilet paper and plastic to keep the cold air from blowing directly on Plaintiff.

56. January 14, 2022, the local news reports that Indiana had 15,962 new cases of Covid-19 with 97 new deaths.

57. January 14, 2022, Plaintiff informs Defendant, CO Carter that he was in pain and had pneumonia and requested urgent medical care. Carter told Plaintiff that Nurses only

come around if you need daily medications or KOP, Plaintiff tells Carter that he takes psych meds regularly.

58. Plaintiff would never receive his psych meds the entire fifteen (15) days in isolation causing a huge interruption in his meds causing the exacerbation of his symptoms.

59. Plaintiff tells Defendant Carter on January 15, 2022, that he was in pain from Covid-19 symptoms. Carter tells Plaintiff to fill out a Health Care Form. Plaintiff did that and later Nurse and Defendant, Adeturo came to Plaintiffs cell to retrieve his Health Care Form. Plaintiff explained to Adeturo he was in pain and having troubles breathing. Adeturo told Plaintiff that she would bring him Tylenol and order X-rays, Adeturo never returned with the promised Tylenol nor did she order any X-rays for Plaintiff.

60. In January's 15th 2022, Health care Form #353765, Plaintiff listed that he needed treatment for being in serious pain due to having Covid-19. No Nursing staff ever administerd any medical attention to Plaintiff throughout the fifteen (15) days that he was quarantined in isolation. Defendant Bagienski returned Plaintiffs Health Care Form when she Falsified it by stating, "a Nurse comes every day to check on you, and there are no medications for pain and that you have to let it run its course." Bagienski would be relieved of her duties on January of 2023, for administering expired Covid-19 shots to Senior Citizen inmates.

61. January 16, 2022, around 9:00 a.m. Plaintiff complains to Defendant Carter that he was having chest pains and struggling to breath. Carter tells Plaintiff that she would contact a Nurse to bring him Tylenol for his pain. That never happened.

62. January 17, 2022, Plaintiff submitted Health Care Request Form #353766, for having pneumonia and other symptoms requesting urgent care. This after Plaintiff tells Defendant Chappell that he was experiencing respiratory pain and shortness of breath. Chappell tells Plaintiff that he would contact medical but that I needed to fill out a health care Request. Also, on this date Plaintiff fills out Health care form #353768, to Mental Health letting them know that he was not receiving any medical attention. Basically, he was suffering emotionally.

63. January 18, 2022 around 7:00am, Plaintiff complained to Defendant, Chappell that he continues to be in pain and needed medical care. Chappell appeared not to have any interest in helping Plaintiff. Around 3:30pm Chappell gives Plaintiff a Blanket and tells Plaintiff that "this is to keep you warm." Chappell and Defendant, Carter were made aware of the broken window by Plaintiff since day one in isolation January 13, 2022. Chappell also told Plaintiff that "the only way he was going to receive any medical treatment if he was dying."

64. January 19, 2022, Plaintiff submits Healthcare form #353767, seeking urgent care for having serious pain, difficult breathing and mental confusion. Plaintiff also tells Defendant, Carter that he was in pain and that he has not received any medical care. Carter instructs Plaintiff to fill out a Health care form. Carter also tells Plaintiff that Defendant Reagle ordered all Covid-19 testing to stop. In February the 12, 2023, Defendant Carter would be terminated from her position as CO of J cell house. Had nothing to do with Plaintiffs case.

65. January 20, 2022, Plaintiff informs Defendant Carter that he continues to be in pain. Carter tells Plaintiff that she will let

Centuried Medical Staff Know what's going on.

66. January 20, 2022, Plaintiff receives two (2) pieces of legal mail from Defendant, Knotts who is the Case manager of the IRT complex, Plaintiff explained that he was in need of medical care and that he has not received any medical care. Knotts said she would consult with medical to get him some care.

67. January 21, 2022, Plaintiff could not speak, throat burning, he was spitting up mucus and blood, as well as his depression was being exacerbated for not receiving any medical care. Plaintiff attempted to tell Defendant Chappell of his symptoms Chappell shows no concern as he was only worried about an alledged water main break. Plaintiff had no water to drink or flush his toiled for a couple of days. Plaintiff was issued several bottles of water. Plaintiff also submits Health Care Form #3933028, asking for breathing treatments.

68. January 22, 2022, Plaintiff again complains to Defendant, Chappell about his ongoing medical issues and hands Chappell Health Care Form #358482, as he sought treatment for being in Serious pain and spitting up mucus.

69. January 23, 2022, Plaintiff sent a letter to IDOC. Defendant, Randolph Final Grievance Authority Specialist, that he was in great danger and needed medical care because he was not receiving any for his Covid-19 illness Randolph never responded to Plaintiffs letter but he did receive it, because Defendant Conyers on April 22, 2022 told Plaintiff in a letter to stop contacting Defendant Randolph. Also, on this date, Plaintiff would tell Chappell of the pain he was in. This time Defendant, Chappell said he would contact the Lt. over the IRT complex Lt. McKinney of Plaintiffs condition. Plaintiff never saw Lt. McKinney.

21.

70. January 24, 2022, Plaintiff sent a letter to Defendant, Conyers requesting that she get involved in trying to get Plaintiff some medical attention. Conyers failed to respond.

71. January 24, 2022, Plaintiff would receive legal mail from Defendant, Knotts. Plaintiff again expressed to her that he needed medical attention. Knotts again said she would check into it. That never happened

72. January 24, 2022, Plaintiff files Grievance #138865 against Defendant, Reagle for the conditions of confinement and him allowing Plaintiff to being exposed to Covid-19.

73. January 24, 2022, Plaintiff complains to Defendant, Carter that he continues to have shortness of breath. Carter tells Plaintiff to submit another health care form.

74. January 24, 2022, IDOC puts on Offenders tablet that anyone testing positive for Covid-19 has to remain in isolation for 10 days. Plaintiff was forced to stay in isolation for 15 days.

75. January 25, 2022, Plaintiff informs Defendant Carter that he continues to have medical conditions. He also puts in another Health care #353769. He puts in a request to Defendant Conyers asking if she can assist in getting some help. Several days later Conyers would only forward Plaintiffs' request to Medical. Plaintiff spoke briefly to an angry Defendant Pryor through the officers station window about the pain he was in and not receiving no treatment. Pryor told Plaintiff that she would get him some Tylenol and x-rays. This never happened. Again, Plaintiff receives legal mail from Defendant Knotts, Plaintiff tells her that he has not been seen and is in pain. Again, Knotts said she would speak to medical. Again, nothing happened.

76. January 26, 2022, Plaintiff asks Defendant where medical was and that he continues to be in pain. Chappell does nothing. Plaintiff was called to the entrance door where Defendant Pryor throws a tube of Hydrocordizone at Plaintiff, smiles, and then quickly departs without any Tylenol. The Hydrocordizone had nothing to do with Plaintiffs Covid-19 treatment. It was for his foot infection that he received early in December 2021 when Defendant Reagle had the showers cut off due to the Legionnaires outbreak and when he decided to only open one of the two showers he had a shower head put on with no water pressure, causing Plaintiff and others to stand in stagminted water and everyones bodily fluids because there was no water pressure to have the water go into the drain clear across the other unuseable shower.

77. January 27, 2022, Plaintiff informs Defendant Chappell that he was having chest pains. Nothing was done.

78. January 27, 2022, Plaintiff gets a visit from Mental Health, Jeremy LaReau, and tells him that he has not had any of his psych meds, and basically he was under emotional Distress.

79. January 28, 2022, Plaintiff informs Defendant, Carter that he's still experiencing chest and lung pains. Plaintiff is allowed to go back to his housing unit without ever receiving any medical care nor follow-up treatments. Plaintiff did send Defendant, ItSA Hamblen a request asking for treatment as he still was experiencing pain. Hamblens response was she "was not going to refer Plaintiff for any treatment."

80. January 27, 2022, Plaintiff submitted request to Mental Health Doctor Mayel notifying him that he had not received any of his psych meds while he was in isolation for 15 days. This was a major interruption in Plaintiffs treatment causing headaches, and other issues,

23.

mental confusion and exacerbated PTSD, Anxiety and depression.

81. February 2, 2022, Plaintiff submits a request form to Defendant Knotts asking about if he would still get paid from his job while he was quarantined for fifteen (15) days. She did not respond.

82. February 3, 2022, Plaintiff submits health care form #353765, and #360768, Defendant Adeture personally took HCF #360768, and noted that she seen him in KY dorm. He told her he's still in pain and had not been seen.

83. February 8, 2022, Plaintiff receives letter from Defendant, Rains stating that Plaintiff needs to contact Defendant HSA, Hamblen in order to preserve medical sheets for B-1 building. Rains C'C Defendants Wargny, Eden on the letter.

84. February 9, 2022, Plaintiff files HCR #382334, requesting medical attention as he continues to suffer Covid-19 symptoms

85. February 11, 2022, Plaintiff submits an Emergency request form to Defendant's Eden and Rains asking them to help Plaintiff in seeking medical attention as Centurion Defendant's was not providing any medical attention every since he filed his first Health care form January 9, 2022. Rains responded, "sent request to medical." Nothing was done.

86. February 11, 2022, Plaintiff submits an emergency request form to Defendant's Reagle and Smith asking them to help Plaintiff to seek medical attention as Defendant's Centurion has not provided him with any medical attention every since he placed his first health care form in on January 9, 2022, of Covid-19 symptoms. Reagle and Smith failed to respond to Plaintiffs' request.

87. February 12, 2022, Plaintiff submitted health care form #382518, to Mental Health as he sought mental health treatment for his elevated anxiety levels as Centurion continues to deny Plaintiff any medical treatment every since he placed his first health care form on January 9, 2022. Plaintiff also submits health care form #382335, for his chest hurting. Plaintiff then submitted health care form #382333, to Mental Health staff member Mr. Troyer, asking him if he had spoken to any Centurion medical staff member for them failing to treat him. Mr. Troyer responded with, "he had emailed Defendant Hamblen."

88. February 13, 2022, Plaintiff submits request form to Defendant Conyers asking her what is the status of the three (3) grievance forms that he submitted on January 3, 2022, January 12, 2022, and January 24, 2022. Conyers failed to respond. Plaintiff submits request form to Defendant Rains requesting her to preserve video footage from when Plaintiff was in isolation in B-1 building from January 13, 2022 through January 27, 2022 to show medical never provided any medical care to Plaintiff and also the footage would show the interactions between Plaintiff and Defendant Pryor throwing the Hydrocordizone tube at Plaintiff. March 17, 2022, Defendant Wargny responded, "our office only preserves 4 hours of footage".

89. February 14, 2022, Plaintiff sent a request to Defendant Hamblen asking her if his Covid-19 swab was sent outside to a lab to confirm if he had Covid-19. Hamblen responded with "No and the Nasel swabs are 90% accurate." Plaintiff submits health care form #392031, complaining about his ongoing chest pain and having difficulting breathing. Plaintiff also had a verbal conversation with Defendant, Spurgin about his ongoing

pain and Respiratory. Plaintiff asked Spurgin if she would contact Centurion so he could receive treatment. Spurgin did nothing to help Plaintiff.

90. February 15, 2022, Plaintiff sent Defendant Conyers, 7 documents to add to his January 27, 2022 grievance #138866 in which these exhibits were items showing Centurion did not treat Plaintiff while in isolation. Conyers never responded.

91. February 16, 2022, and forty (40) days after Plaintiff filed his first health care form on January 9, 2022 for Covid-19 symptoms, multiple healthcare forms, multiple request forms, and multiple conversations with IDOC and Centurion staff, Plaintiff is finally seen by Centurion Health Services. After all the denying of any Medical Treatment for a Serious Medical Condition he was prescribed treatment which was an Albuterol inhaler N.P. Osburn also ordered what other Defendants such as Adoturo and Pryor said they would do and did not, and that was chest X-rays. Mr. Osburn also ordered Nebulizer treatments Defendant Mershon would later cancel these treatments.

92. February 21, 2022, Plaintiff is seen by Mental Health Professional, Mr. Lareau where Plaintiff discussed issues and concerns about not being seen by Centurion Defendants for forty (40) days. Plaintiff also submits health care form #393027 complaining for on going Lung pain.

93. March 1, 2022. Plaintiff submits healthcare form #393028. Plaintiff also submits request to Defendant Rains requesting her to preserve the Officer Logbooks from B-1 building from January 13, 2022 through January 27, 2022 which will show times and dates of when Centurion Nurses came and went. Rains responded March 4, 2022, "Completed"

26.

94. March 3, 2022, Plaintiff files a Indiana Tort Claim against IDOC and Centurion Health Services, LLC for denying medical care and other reasons listed in this Complaint.

95. March 3, 2022, Plaintiff submits a request to Defendant Rains informing her that Defendant, HSA Asst Bagienski falsified Plaintiffs grievance #138866, when she stated, "Plaintiffs' vitals and temperature was checked everyday while he was in quarantine January 13, 2022 - January 27, 2022" and asked Rains if she could preserve the medical sheets from that time. Rains failed to respond.

96. March 7, 2022, Plaintiff sent Defendant Rains a request for her to preserve camera footage of B-1 building of when Plaintiff was quarantined for Covid-19 from January 13, 2022-January 27, 2022. Rains failed to respond. This would show no treatment to Plaintiff.

97. March 8, 2022, Plaintiff submits HCR #392739, for continued respiratory pain, as well as no follow-up treatment.

98. March 9, 2022, Plaintiff submits HCR #392738 to Mental Health complaining and wanting to be seen because Administration is retaliating against him, which is causing him Emotional Distress.

99. March 10, 2022, Plaintiff submits request to Defendant, HSA Hamblen asking to preserve medical sheets in B-1 building January 13, 2022 - January 27, 2022. Hamblen states, "they are already in a folder." Hamblen would later deny Plaintiffs request.

100. March 11, 2022, and 58 days later after Plaintiff filed his first health care form January 9, 2022, is he finally seen by Defendant, Mershon who did order a EKG for Plaintiff.

101. March 14, 2022, Plaintiff submits HCR #392026, and #392729 for vomiting, Nauseated, chest and heart hurting, and needed pain medication.

102. March 15, 2022, Plaintiff submits request to Defendant Rains asking her to preserve camera footage of the Chow Hall during feed times from December 11, 2021 through January 11, 2022. This would show that inmates were no longer receiving a spray of hand sanitizer, as they entered Chow Hall. Rains failed to respond.

103. March 18, 2022, Plaintiff submits health care forms # 392735 complaining of respiratory, and heart pain, shortness of breath, night sweats and not being able to sleep.

104. March 21, 2022, Plaintiff sent Defendant's Reagle and Smith a request asking them to preserve camera footage of B-1 building from January 13, 2022 - January 27, 2022. Neither Defendant responded.

105. March 23, 2022. Plaintiff submits request to Defendant, Wargny asking her to preserve four (4) hours of camera footage a day from when Plaintiff was quarantined in B-1 building. Wargny failed to respond.

106. March 23, 2022, Plaintiff was finally seen by Centurion Nurse, Oluwafemi E. Daso. No treatment provided.

107. March 28, 2022, Plaintiff submits HCR # 353765, for respiratory pain, shortness of breath, fatigue, eyes hurting, bowel issues and sinus issues.

108. April 1, 2022, Plaintiff submits HCR # 358747 requesting Breathing/nebulizer treatments for his lungs burning.

109. April 6, 2022, Plaintiff is seen by Defendant Mershon who for the very 1st time since January 9, 2022 that Plaintiff is prescribed any treatment from Mershon in which he prescribed Predisone. Unfortunately, this treatment did not work for Plaintiff because his lungs still burned after treatment.

28.

110. April 15, 2022, Plaintiff submits HCR #391/079, requesting a Covid-19 test as he's waking up in pools of sweat and continue to suffer respiratory issues. Centurion failed to test Plaintiff.

111. April 25, 2022, Plaintiff receives Defendant Wargny's response to his April 20,2022 Public access request to preserve B-1 building camera footage. Wargny denied his request.

112. April 28, 2022, Plaintiff seen Medical Provider N.P. Osburn who issues another inhaler to assist Plaintiff in his breathing and for the pain in his lungs.

113. April 29, 2023, Plaintiff was seen by Defendant M.D. Carter, who tells Plaintiff there is nothing he can do for Plaintiff.

114. May 12, 2022, Plaintiff submits HCR #385698, stating Defendant, Bagienski was retaliating against Plaintiff by not ordering his Flomax medications for his enlarged prostate. Because of Bagienski's delay of this medication for nearly sixty (60) days caused Plaintiff to suffer a groin infection when he did re-start the medications.

115. May 13, 2022, Plaintiff saw Defendant, Mershon who observed Plaintiff was experiencing breathing problems. Nothing was done.

116. May 20, 2022, Plaintiff submits HCR #391724 requesting what is the status of his Breathing treatment as he is suffering from Long term Covid-19 that Mershon diagnosed him having on May 13, 2022. Defendant HSA, Hamblen responded, "they will not give you breathing treatments."

117. May 20, 2022, Plaintiff submits HCR #391724, for continuing respiratory issues. Defendant, HSA Asst, Bagienski stated, "if your O2 levels are bad then they will give you breathing treatments." O2 levels do not measure lungs burning from an infectious disease. You would think Centurion staff should know this?

118. May 22, 2022, Plaintiff receives Final Denial #138866, grievance, where Plaintiff grieved for not receiving medical care during his isolation for testing positive for Covid-19. Defendant, Randolph stated, "He received appropriate care." This after Plaintiff complained to Randolph that he was not receiving any care through a letter that Plaintiff sent to him on January 22, 2022.

119. May 24, 2022, Plaintiff sent Defendant, HSA. Hamblen a request asking if all Covid-19 protocols and procedures were followed during Plaintiff's isolation in O-1 building. Defendant, HSA Asst. Bazierski responded with false statements that "all protocols were followed to include daily temperature checks by staff." Plaintiff also sent HCR #388693 to Defendant Mershon that he was experiencing memory loss. Mershon responded June 11, 2022, telling Plaintiff to contact Mental Health.

120. May 26, 2022, Plaintiff was seen by N.P. Osburn who again ordered breathing treatments and a Pulmonary Function Test for Plaintiff. Defendant Stasiak and Mershon would again cancel Plaintiffs Nebulizer treatments.

121. June 3, 2022, Plaintiff sent request to Defendant, Wargny asking her to preserve camera footage from the two (2) incidents involving Defendant Adeturo and Officer Garland in K-4 when they falsified a conduct report which would later be dismissed and Adeturo administering Plaintiff his psych medications by putting perfume on the Nine (9) capsules causing Plaintiff to vomit, when he injested them.

122. June 8, 2022, Plaintiff submits HCR #384368, requesting that his O2 levels get checked as well as a test for his memory Loss due to Long term Covid-19. Defendant, Nurse, Adeturo denies his request.

30.

123. June 13, 2022, Plaintiff was finally seen by Defendant Stasiak, and Nineteen (19) days after N.P. Osbven ordered a PFT test for Plaintiff, Stasiak became very angry when she was not receiving the Numbers that Plaintiff was blowing into the device, that she forced Plaintiff to blow over and over again that left Plaintiff coughing and his lungs exacerbated in pain all over again. Stasiak falsified Plaintiff's medical records when she stated, "Plaintiff did not follow PFT instructions." Stasiak's false statements led to Defendant Mershon denying Plaintiff's Nebulizer treatments.

124. June 16 and 17, 2022, Plaintiff is denied a memory test by Centurion Medical and Mental Health.

125. June 18, 2022, Plaintiff sent Defendant, HSA, Hamblen a request for breathing treatments. Hamblen would deny his request.

126. June 20, 2022, Plaintiff submits a request to Defendant Wargny requesting her to preserve camera footage of his interactions between him and Defendant, Case Manager, Knotts in B-1 building on January 20th, 24th and 25th of 2022. Wargny failed to respond.

127. June 21, 2022, Plaintiff was seen by N.P. Osbven for HCR #384637. After examining Plaintiff, Osburn for the third (3) time placed an order for breathing treatments. Again, Defendant Mershon and Stasiak would deny.

128. June 30, 2022, Plaintiff sends Defendant Wargny a request to preserve camera footage of the Chapel services that Plaintiff attended in December 16, 23, and 30th and January 6, 2022. The footage will show that Plaintiff wearing his mask and nobody else wearing masks, no social distancing and inmates from all housing units were allowed to intermingle. All during a major Covid-19 outbreak.

129. August 6, 2022, Plaintiff submits HCR #381380, complaining of continued Lungs burning. He also asked is there any other treatment plans available. Since Plaintiffs Nebulizer orders kept getting cancelled by Defendant's Mershon and Stasiak, Plaintiff contacted Medical Records asking for copies of the denial records for his Nebulizer orders that N.P. Osburn placed. Medical records responded with "No such orders can be located." This is a common practice for Centurion to deny orders verbally instead of documenting the denials as policy states they must do.

130. August 8, 2022, Plaintiff sends IDOC Commissioner, Carter a letter asking him to preserve camera footage from the time Plaintiff was in isolation in B-1 building for testing Positive for Covid-19, January 13, 2022- January 27, 2021. Commissioner Carter failed to respond.

131. August 31, 2022, Plaintiff filed a grievance against Defendant HSA, Ass't Bagienski for refusing to give test results of another infectious disease Legionnaires to Plaintiff. The grievance would be blocked by Defendant Conyers.

132. September 5th 2022, Plaintiff submits HCR #407250, requesting that he get a scan of his lungs from an outside Hospital as he was concerned that Covid-19 attacked his Nodules that were found on his lungs in late 2019, and that this maybe the cause of all the pain and burning in his Lungs.

133. September 16, 2022, N.P. Osburn issued a Fluticasone inhaler for Plaintiffs ongoing respiratory issues.

134. November 18, 2022, Plaintiff submits HCR #397137, asking Defendant Mershon if he would order Nebulizer treatments for the pain Plaintiff continues to experience in his lungs.

Mershon responds on November 21, 2022, with "lets wait another 2 months to see what happens". Mershon continues to cause Plaintiff pain and suffering, by not treating Plaintiff for his serious medical conditions. This is Emotional Distress.

135. December 7, 2022, Plaintiff submits HCR #403924, to HSA Asst, and Defendant Bagienski asking if medical spread sheets were used in B-1 building during the time Plaintiff was in isolation for Covid-19. December 8, 2022, Bagienski falsifies the health care form when she stated, "Medical is not in charge of writing down Nurse visits. This comes from Custody." Bagienski is only covering up for the violations that occured by Centurion during Plaintiff and others quarantined in B-1 building in January 2022.

136. January 16, 2023, Plaintiff submits HCR #395465, to Defendant HSA Hamblen, asking why is she holding onto Plaintiffs health care forms for weeks. This is a reason why Plaintiff was not being seen by the Doctor.

137. January 9, 2023, Plaintiff receives letter from N.P. Osburn stating that, "he has placed an order to have a CT Scan of Plaintiffs lungs."

138. Around January 11, 2023, Defendant, HSA Asst, Bagienski would resign, and IDOC would would put a gate closure on her and noted not to rehire her. She administered expired Covid-19 shots to several senior citizen inmates.

139. January 28, 2023, Plaintiff submits HCR #395729, to eye clinic complaining that he's been experiencing left eye issues probably due to Covid-19. Later he would be seen by that Clinic.

140. March 3, 2023, Plaintiff is taken to Outside Hospital for a CT Scan of his lungs were done. There were

lower Lobe pulmonary Nodules, right middle Lobe pulmonary nodules, and bilateral hilar Lymph Nodes identified and Found on Plaintiff's lungs.

141. March 14, 2023, Plaintiff submits HCR #403525, to Defendant HSA, Hamblen asking why was she holding onto Plaintiff's health care Forms while she was on Leave. March 14, 23, Hamblen Falsify's the health care form she states that, "she is not with holding his health care forms." Plaintiff has documentation from another nurse stating Hamblen has them on her desk while shes on Leave. This is totally against Policy.

142. March 15, 2023, Plaintiff receives two (2) different inhalers For his respiratory issues, a. Fluticasone and b. Albuterol Sulfate. He would also receive an anti inflammatory and pain medication called Mobic. Plaintiff remains on his inhalers and mobic medications through the time of this filing.

143. From January 2023 through March of 2023, Plaintiff would be charged For visits that he should not be charged for. Defendant, HSA, Hamblen would force Plaintiff on two (2) seperate occasions submit his/copies of his 6 month inmate trust account in order to show her the charges. Plaintiff had no health care forms showing where he was ever charged the $20.00 worth of visits. Plaintiff also sent documents in April of 2023 to try to clear this up but Hamblin never refunded his money.

144. Plaintiff would file additional Grievances against Defendant HSA, Hamblen in September and October 2023 for Retaliation, holding back health care forms for weeks, and denying Plaintiff medical care. At the time of this filing Plaintiff continues to Struggle with Long term Covid-19 symptoms. This all could have been prevented if the Defendant's did their jobs and followed Policies.

## VI. CAUSE OF ACTION
### i. STATE DEFENDANTS

141. Claim #1, Eighth Amendment, "deliberant indifference" claim against Defendant, Warden, Dennis Reagle acted in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights and serious medical needs when Reagle allowed Plaintiff to be housed in an unsafe and unsanitary environment in which Plaintiff was exposed to the deadly disease, Covid-19 when Reagle had only two (2) showers in Plaintiffs housing unit K-4 dorm cut off from the thirty six (36) men from using for days, all five (5) sinks were cut off from hot water for three (3) months, no cleaning supplies for days, starting December 3, 2021 through March of 2022. This after Reagle put a band-aid on one deadly disease Legionnaires Disease outbreak over another one the deadly disease Covid-19, in which Plaintiff became very ill from these diseases

142. Claim #2, Eighth Amendment, "conditions of confinement" claim against Defendant, Warden, Dennis Reagle who acted in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when he allowed Plaintiff to be housed in K-4 dorm an unsafe and unsanitary environment in which Plaintiff was exposed to the deadly disease Covid-19. Reagle had Plaintiffs housing units two (2) showers cut off from anyone using them for days, all five (5) sinks were cut off from the hot water for three (3) months, no cleaning supplies for days at a time, all while in the midst of a deadly outbreak of Legionnaires disease and a huge spike in Covid-19 cases starting December 3, 2021 through March of 2022. There were multiple inmates to include Plaintiff that were sick with Covid-19 that were from Plaintiffs

housing unit but only a few put in health care forms and tested positive for Covid-19 January 13, 2022. These unsanitary conditions led to a huge spike in Large Cockroaches, gnats, stinch and filth as the inmates had no hot water, or cleaning supplies to clean the dorm with, nor water to shower in which left men smelling of foul odors for days. A few days after December 3, 2021, Reagle would open only one (1) of the two (2) showers but placed a special shower head that controlled the output of the Legionnaires bacteria but it only allowed the water to trickle out with no water pressure leaving the men to stand in stagnented water and everyones bodily fluids. This would lead to Plaintiff suffering a very painful foot infection that required medical attention.

143. Claim #3. Eighth Amendment, "conditions of confinement" claim against Defendant's David Chappell, and Kristina Carter who acted in his and hers individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when Plaintiff was placed in isolation and quarantined for testing positive for Covid-19, on January 13, 2022 through January 27, 2022, in B-1 building in the IRT complex, Chappell and Carter were the two (2) Officers in charge of the isolation unit. At first Plaintiff would be placed in a cell that did not have a functioning heater. When Plaintiff was let out of his cell on January 13, 2022 to retrieve his property, he refused to go back in that cold cell. The yard crew was called. Yard Crew, Sgt. Lungsford inspected the cold cell, and told Sgt. Ramos that Plaintiff could not go back in that cell. The second cell had window paigns missing causing extremely cold air to freely flow through. Plaintiff had to use wet toilet paper to chauk the window along with

some plastic bags in order to stop the flow of cold air from coming in. Chappell turned a blind eye along with Carter when he complained many times of his cell conditions. Chappell and Carter's failure to fix the problem exacerbated Plaintiffs already deteriorated Mental Health conditions resulting in a serious threat to Plaintiffs health and safety, while he was already in isolation and in quarantined for being sick with the deadly disease Covid-19.

144. Claim #4 Eighth Amendment, "deliberate indifference" to Plaintiff's serious medical needs claim against Defendants Chappell and Carter for when they acted in his and hers individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when they denied Plaintiff medical attention for fifteen (15) days that Plaintiff was quarantined in B-1 building of the IRT complex for testing positive for the deadly infectious disease Covid-19. When Chappell and Carter would do their walking rounds, Plaintiff would tell them verbally and on health care forms that he was suffering of symptoms of pnemonia, shortness of breath, respiratory issues, coughing up mucas and blood, fatigue, anxiety, lungs burning, kidney pain, throat pain, mental confusion, depression, and exacerbated PTSD with a weakened immune system. Chappell and Carter would always tell Plaintiff to fill out a Health Care Form or at times they would tell Plaintiff that they would contact Medical Staff. Plaintiff was never treated for his very serious medical conditions the entire fifteen (15) days by Medical nor did he ever receive his Mental Health medications. For the next several weeks Plaintiff would lose a substantial amount of weight, 25 lbs. Plaintiff would be forced to clean his cell and walk downstairs to retrieve some ice on his own, because there was

No detail to assist Plaintiff. Defendants did deny serious medical treatment to Plaintiff.

145. Claim #5. Eighth Amendment, "conditions of confinement" Claim against Defendant, Warden, Dennis Reagle who acted in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when Reagle did not follow CDC guidelines, and IDOC Covid-19 protocols and procedures that led to Plaintiff's constitutional rights being violated from December 2021 through January 2022, when Reagle knew there was a major Covid-19 outbreak because he quarantined parts of the facility at different times such as JCH and HCH toward the end of 2021, but yet totally disregarded all Covid-19 protocols and infectious disease controls when Reagle only focused on the Legionnaires Outbreak from December 3, 2021 when it was first announced of such outbreak. Reagle allowed all visits to continue til late December 2021, He allowed all inmate count letters to proceed such as all Religious Count Letters and Shakesphere just name a couple, to where dozens of inmates would be allowed to intermingle from other housing units even those housing units that had be placed on quarantine and let off. Reagle would stop all passing out of the protective masks, soaps, at times cleaning supplies, not enforcing social distancing, and stop the hand sanitizer squirts that inmates only place to get a squirt of hand sanitizer would be at the Chow Hall. Reagles poor decisions as a Supervisor, would lead to Plaintiff and several others from Plaintiffs housing unit and others throughout the facility to become very ill with Covid-19, Plaintiff tested positive for Covid-19 on January 13, 2022. Reagle neglected and turned a blind eye to all CDC guidelines and Covid-19 protocols and

procedures which led to a total Facility Lockdown on January 11, 2022, because by that time Covid-19 had taken over the facility forcing Reagle to lock it down. While Plaintiff was in isolation and on January 19, 2022, that Defendant, Carter told Plaintiff, Reagle ordered all Covid-19 testing to stop. Also because of Reagles neglect, Plaintiff would suffer years of long term Covid-19 symptoms and early on he would suffer a significant amount of weight loss of 25 lbs. At the time of this filing Plaintiff would continue to use inhalers to breath better, and take generic mobic for the pain in his lungs.

146. Claim #6, Eighth Amendment, "conditions of confinement" claims against Defendant Warden, Reagle for acting in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when Reagle failed to protect Plaintiff from an infectious disease Covid-19, because Reagle turned a blind eye and only showed concern for the Legionnaires outbreak in December of 2021 and January of 2022 that did take lives and made hundred's sick. See, Case No. 1:23-cv-00523-JPH-KMB. Also, under Reagles watch and due to Reagles Neglect and borderline criminal behavior, multiple inmates lost their lives and hundreds would become ill with and from Covid-19 virus. This includes Plaintiff. At the time of this filing and placed on Offender Channel is a post that there is another Covid-19 outbreak. In late 2021, Reagle knew that Covid-19 was running ramped through the facility because he quarantined part of the facility and then would take housing units off quarantine, he continued with visits as though nothing was wrong, he continued all inmate Count letters such as Religious Services and shakesphere til late December of

34.

2021, all while doing away with handing out masks, soaps, and for days at a time No Cleaning supplies. Reagle could have protected Plaintiff and others had he shut down visits, count letters so inmates could Not intermingle, shut down Recreation, stopped sit down meals in the Chow Hall, had staff and inmates continuing wearing their PPE, masks, continued to pass out masks and soap, had an inmate to continuing squirt hand sanitizer at the entrance of the Chow Hall, placed hand sanitizer in all housing units. Reagle made the decisions not to do all those things. The failure to protect Plaintiff caused Plaintiff to become extremely ill with the Covid-19 virus and a significant amount of weight loss of 25 lbs, Plaintiff believes that he contracted the disease at least one other time in 2020. Plaintiff continues to suffer today with Long term damages of Covid-19 and Legionnaires with other damages of mold in his housing unit. His damages includes a Number of health issues physically and Emotionally as he is forced to continue to use an inhaler and take pain medications. This all could have been prevented but was   due to Reagles failure to protect Plaintiff Warren.


147. Claim #7. Eighth Amendment, "Conditions of Confinement" Claims against Defendants, Dennis Reagle and Jennifer Rinehart, acting in his and hers individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when they failed to provide Plaintiff's housing unit K-4 dorm with chemicals, sanitizers and cleaning supplies so that the dorm could properly sanitize the dorm to include toilets, showers, sinks, and floors. There would be days toward the late part of 2021 and beginning of 2022 that No cleaning supplies would show up thus, violating CDC recommendations

and IDOC policies and procedures, especially during two (2) major infectious disease outbreaks that have killed inmates and sickened hundreds to include Plaintiff. Defendant Rinehart is the Sanitation Sgt. and her boss is Defendant, Reagle and both are responsible for maintaining cleaning supplies to all housing units two (2) times a day. When K-dorm would receive its cleaning supplies the bottles in which they come in would be so watered down that the chemicals would not properly disinfect. Because of Reagles and Rineharts neglect of failing to provide the basic cleaning supplies during two (2) major infectious disease outbreaks led to Plaintiff getting extremely ill emotionally and physically, finally he would test positive for the deadly disease Covid-19, and he lost a significant amount of weight 25 lbs, in which Plaintiff continues to suffer today with being on inhalers just to breath better and taking pain medications "mobic" to reduce the pain in his lungs from burning as he's been diagnosed with Long term Covid-19.

148. Claim #8, Eighth Amendment, "Cruel and unusual punishment" claims against Defendant Reagle, acting in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights for failing to provide, water, hot water and bottled water when Reagle ordered all water to K-4 dorm showers to be shut down for days starting December 3, 2021 when it was first learned from Fox 59 News that there was a Legionnaire's Disease outbreak at PCF. Reagle also ordered all five (5) sinks in K-4 dorm to be shut down of all hot water for three (3) months during two (2) major infectious disease outbreaks of Legionnaires and Covid-19.

Reagle could have ordered clean safe water to be trucked in or even ordered bottled water for the men to drink and bath in like other prisons have done in the past when something like this occured but he failed to do See Elcock v. Davidson, 2013 U.S. Dist. Lexis 194038, U.S. Dist. ct for C. D. Ill February 22, 2013, #3, "ten hours after the water was shut off, officer began handing out bottled water to inmates and telling them not to drink tap water. See Richard v. Aldridge 2022 U.S. Dist. Lexis 138860, U.S. Dist. Ct for E. Dist. CA, August 3, 2022, "Legionnella had been discovered in the institution water, bottled water would be distributed for drinking, face washing, and oral hygiene; Inmates were advised not to consume sink water, not to use for oral hygiene, and to keep it away from their faces; Inmates were distributed a one-gallon size bottle of water per inmate per day." Due to Reagles decisions not to provide safe drinking water, it led to the unsanitary conditions in Plaintiffs housing unit K-4 dorm, men smelling of foul odors for days, no way to properly sanitize their eating utensils. This all going against CDC guidelines and Covid-19 protocols and procedures. Reagle opted to save cost by not issuing clean safe water over human beings health because the saving of not issuing bottled water would increase his overall profits at the end of the year. Reagle's actions and decisions did lead to Plaintiff becoming extremely ill and caused a significant amount of weight loss of 25 lbs. to Plaintiff when he contracted Covid-19 on January 13, 2022 when he tested positive for the disease. Nearly a couple of years later Plaintiff continues to be in serious pain with Long Term Covid-19 symptoms and has to use inhalers so he can breath better and pain medications named Mobic for his lung pain.

149. Claim #9, Eighth Amendment, "deliberate indifference" claims to Plaintiff's serious medical needs against Defendant's, Reagle, Conyers, Randolph, Rains, Eden, Smith, Knotts, Spurgin, and Wagny acting in their individual capacity under color of state law to deny Plaintiff of his constitutionally protected rights when all were made aware of Plaintiff's serious medical needs and conditions and elected not to intervene and get Plaintiff some medical care. From the time Plaintiff tested positive for Covid-19 on January 13,2022, til the first time he was seen by Centurion medical staff on February 16, 2022, he submitted letters via U.S. Postage Service to Defendant Randolph, he submitted personal letters to Defendant's Reagle and Smith, he submitted multiple requests to Defendant's Conyers, Rains, Eden and Wagny, he even had verbal conversations with Defendant's Spurgin and Knotts explaining to all that he was very ill because he had contracted Covid-19, and urgently needed medical care because Centurion was refusing to treat the Plaintiff as he would be thrown into a cell like a dog in a cage, for fifteen (15) days with a deadly disease and never receive any treatment for his pain. All of the Defendant's listed in this claim were fully aware of Plaintiff's serious medical concerns and either knowingly or recklessly disregarded his crys for help. Had any of the Defendant's taken any action to get Plaintiff medical care, then Plaintiff may not have been forced to wait nearly forty (40) days to be seen by Centurion medical staff, and may not have lost a substantial amount of weight 25 lbs. These delays did exacerbate Plaintiff's pain and suffering physically and emotionally.

150. Claim #10, First Amendment, retaliation claims, Fourteenth Amendment, due Process violations, and Conspiracy claims made against Defendants Reagle, Conyers, Randolph, Smith, Wargny, Eden, Rains and Rinehart all acting in their individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights who all were involved in Plaintiffs retaliation claims for denying, delaying and not responding to many of Plaintiffs grievances, letters, public access requests, failing to preserve video footage which then caused Plaintiffs Fourteenth Amedment Rights violations when the Defendants would not process, respond, and put up road blocks in order to keep anything from moving forward in any processes such as grievances and public access requests when the Law and IDOC policies and procedures tell them they must do. All the Defendants listed in this Claim did Conspire against Plaintiff when they all would keep the grievances and Public Access Request's that the Plaintiff filed pertaining to this Complaint for his Covid-19 exposure/medical conditions from moving forward in the process starting December 2021 through current date to include September 6th 2023, when Rinehart came storming into Plaintiff's housing unit yelling that "Warden Reagle told her to tell us to stop writing grievances and filing Lawsuits" She then yelled, who is the Fucking detail in here. Conyers and other Defendants actions were done in retaliatory motives toward the Plaintiff.

160. Claim #11, IIED/Emotional Distress State Claims against Defendants, Reagle, Wargny, Conyers, Randolph, Knotts, Eden, Rains, Smith, Chappell, Carter, Spurgin and Rinehart all acting in their individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights

when Plaintiff made them all aware of his serious medical conditions through U.S. Postage mailed letters to Randolph, letters to Defendants, request to Defendants, verbal conversation with the Defendants such as Spurgin, Knotts, Chappell and Carter, he sent grievances and health care forms to Defendants and all did Nothing to get Plaintiff some medical attention in which their Neglect led to Plaintiff's exacerbated PTSD, mental, emotional and physical conditions from January 13, 2022 through current date to include Rineharts scared tactics when she ran into Plaintiff's housing unit on September 6, 2023, yelling that "Warden, Reagle sent her there to tell the men to stop filing grievances and Lawsuits." Rinehart then yelled, "Who's the Fucking detail in here". Plaintiff still has to seek mental Health treatment for how IDOC personel has handled this situation and the fear that he will be attacked again by Covid-19. As late as November 16, 2023, the Offender Channel states there are confirmed Covid-19 cases in the facility. Plaintiff fears of Retaliation by IDOC staff for filing this Lawsuit. Plaintiff fears that the Defendant's will Emotionally harm him again by not assisting him in Medical attention if he asks them. This denial of medical attention after Defendant's were made aware of his conditions and no medical attention for testing positive for Covid-19, did they all engage in extreme and outrageous conduct when they intentionally or recklessly caused severe emotional distress to Plaintiff by blantantly and wantonly failing to seek medical treatment while Plaintiff laid sick in quarantine for fifteen (15) days and would be nearly Forty (40) days before any medical staff from Centurion would even see him in a Doctor's office.

45.

Plaintiff believes that the denial of the Defendant's of getting any help was caused by prior grievances that the Plaintiff wrote against these Defendant's which led to the Defendant's not seeking any kind of medical assistance to Plaintiff starting January 13, 2022. The Defendant's actions led to Plaintiff enduring serious emotional damages that carry on and through today. The Courts have stated in Gidarisingh v. Dobbins, 2022 U.S. Dist. Lexis 191927, U.S. Ct. E. Dist. Wis. (October 20, 2022) *6, "Unlike an ordinary citizen, a prisoner maybe particularly susceptable to emotional distress based on the with holding of certain medical care because he has no other way to secure treatment for himself other than thru internal medical staff," The reasons Plaintiff made contact with the Defendant's was to ask them to get involved to get him some medical attention due to his medical Provider, Centurion was doing nothing at all to help him and would not help him until forty (40) days after Plaintiff put in his first health care form on January 9, 2022 which also resulted in Plaintiff losing a significant amount of weight 25 lbs. The Defendant's conduct was so erigious and even criminal and allowed Plaintiff to defend for himself and lay in pain when they are in the positions to protect the Plaintiff. Plaintiff is awarded to the State and not the Contractor Centurion Medical Services. Thus, the Defendant's did cause Intentional Infliction of Emotional Distress to the Plaintiff.


161. Claim #12. Monell Claim, State Claims of "Supervisor Liability," "Negligence" and "Failure to Protect," against Defendant Reagle acting in his individual capacity under

46.

color of State Law to deny Plaintiff of his Constitutionally protected rights when Reagle was the main cause of Plaintiff contracting the deadly disease of Covid-19 which killed over 1 million people nationwide, and multiple inmates at the Pendleton Correctional Facility, as well as hundreds sick at PCF to include Plaintiff in which he would lose a significant amount of weight 25 lbs. Reagle was Negligent toward Plaintiff's risk of being infected with Covid-19 in late 2021 and early 2022. Reagle was fully aware that the risk of Plaintiff being exposed to Covid-19 was likely because Reagle is the decision maker that lock downed and quarantined some housing units off and on in late 2021 but yet continued visitations, inmates allowed to intermingle with each other from other housing units to include the ones that Reagle lockdowned, cut off the water in showers of Plaintiff's housing unit K-4 dorm, and then when Reagle did cut only one shower, he had a shower head placed on the shower that was suppose to capture the Legiovella bacteria when there would be no water pressure coming out causing Plaintiff to stand in 35 other men's bodily fluid and dirty soap scum in which did cause Plaintiff to suffer a serious foot infection that would lead to open wounds and bleeding, no hot water in any of the sinks for three (3) months, Reagle stopped passing out masks and soaps, limited cleaning supplies, No infectious cleaning crew, all because Reagle turned a blind eye to the Covid-19 crisis and focused on the Legionnaires outbreak. Reagle was Negligent in his duties and failed to protect the Plaintiff from contracting the deadly infectious disease of Covid-19. This led Plaintiff to becoming very ill with no medical care for forty (40) days in which

Plaintiff continues to suffer today and seek medical attention for his long term Covid-19 damages. See Daniels v. Knight, 2021 U.S. Dist. Lexis 18301, U.S. Dist. Ct. S.D. of Ind., Cause No. 1:21-cv-00183-TWP-TAB, the Courts stated, "In his complaint, mr. Daniels alleges that the Defendant's failed to take proper precautionary measures to prevent the spread of Covid-19 at CIF where mr. Daniels is incarcerated. As a result, mr. Daniels Suffered from Covid-19 symptoms. The Court permitted Eighth Amendment and State Law Negligence claims to proceed in it's screening."

Reagle is Negligent for causing Plaintiff's serious health conditions from being exposed to Covid-19 in which Plaintiff continues to have complications of the disease causing him to use inhalers and pain medications for his respiratory issues.

Reagle's failure to train his staff in how to deal with the Covid-19 crisis and Legionella bacteria outbreak led to the complete failure in every conceivable way of Reagle protecting the Plaintiff from contracting the Deadly diseases.

Plaintiff did file a Indiana Tort Claim against Defendants for this Covid-19 situation in march of 2022 and it was denied June of 22.

To show a pattern of Defendant's behavior's, he has listed case law in support of such claims. See Exhibit 1 attached.

48.

## ii MEDICAL DEFENDANTS

162. Claim #1, Eighth Amendment, "deliberate indifference" cliam against, Defendant M.D. John Mershon acting in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when he consciously disregarded a serious risk to Plaintiffs health. Mershons actions or inactions caused the delay in Plaintiffs treatment and that the delay exacerbated the Plaintiffs injury of Covid-19. Meshon was the Medical Director at the time Plaintiff placed his first health care form January 9, 2022 for Covid-19 symptoms. The delay took four (4) days for a Centurion Health Services staff member to see Plaintiff, which the delay for a Known medical condition is against the Health care policy. Plaintiff did complain in his health care of having Covid-19 symptoms, so one would think that he should be seen immediately. Instead four (4) days after submitting the healthcare he and others from his housing unit would finally be seen at the Urgent Chronic Care unit. Plaintiff was given a nasal swab test where he tested positive for the Covid-19 virus. Two (2) other men from Plaintiff's housing unit K-4 dorm were tested. One tested positive and the other inmate was sent back to the dorm. That inmate found out two (2) weeks later that he actually tested positive. Plaintiff after testing positive would be sent back to B-1 building which is in the IRT complex. Plaintiff would be sent back to isolation on January 13, 2022 without ever receiving any treatment or offered a Tylenol for his pain. Mershon did have Plaintiff quarantined in a cell without any treatment or follow up treatment. During the fifteen (15) days in isolation the Plaintiff was never treated by a Centurion staff member. Plaintiff never had his vitals

Checked nor his temperature. He was thrown in a cell like a dog in a cage to defend for himself, without any medical treatment provider. Over the fifteen (15) days of isolation, he put in five (5) health care forms. All five would be denied of any Plaintiff's issues. Mershon forced Plaintiff to wait for Forty (40) days to be seen by a medical staff member. During those forty (40) days of terror, Plaintiff complained to Centurion and IDoc staff about the pain he was in. Mershon instead of treating the Plaintiff around the fortyth (40) day, Mershon passed the Plaintiff off to a Nurse Practitioner. Mershon was deliberate indifference to Plaintiff's serious medical conditions and consciously disregarded a substantial risk of serious harm and a serious medical need that required treatment. Mershon was fully aware that Plaintiff had underline medical conditions such as diabetes, high blood pressure, hypertension, enlarged prostate, nodules on his lungs, prior Legionnaires symptoms, Limes disease, Tuberculosis and took prozac to deal with his PTSD, anxiety, and depression. These issues were well documented in Plaintiffs medical records and regularly took medications for these issues. Mershon knew that there was an excessive risk to Plaintiffs safety and totally disregarded it. Mershon did not only delay Plaintiff's treatment for Covid-19, but also denied treatment for weeks and months to the Plaintiff. Many occasions throughout 2022, Mershon would deny to treat Plaintiff, instead passing him off to his Nurse Practitioner. Plaintiff witnessed such event one time to where he observed mershon pass Plaintiffs health care form-to the Nurse Practitioner. The Nurse Practitioner ordered breathing treatments for Plaintiff and mershon would always cancel them.

50.

Thus, denying Plaintiff serious medical treatment. The Nebulizer treatment would have helped the Plaintiff as they are more powerful than inhalers. Mershon and his infectious Nurse and Defendant Stasiak believed that in order to receive Nebulizer treatments you must have low O2 levels. Mershons lack of Covid-19 treatment experience showed because O2 levels do not detect lungs burning. Mershon even falsified Plaintiff medical records where he noted he discontinued all Nebulizer treatments. Mershon never allowed Plaintiff to have Nebulizer treatments. Mershon once told Plaintiff that his lack of treatment was because of staff shortages. In December of 2022, Mershon noted on Plaintiff's health care form when he again requested Nebulizer treatment that "lets wait two (2) months to see what happens." This is outragious behavior by Mershon. Mershon could have tried something to assist Plaintiff besides order a EKG or prednisone but he never did. It took 83 days from Plaintiff's first health care form for Covid-19 symptoms, for Mershon to make an attempt to help Plaintiff which was an order for Prednisone. That treatment plan was ineffective. Mershons actions to wait 83 days is unconscionable, to imagine that it would take this long to make an attempt to treat the Plaintiff. Plaintiff is issued his first inhaler 105 days after he put in his first health care form January 9, 2022 for Covid-19 symptoms. Late may of 2022, Plaintiff complained of having memory loss. Mershon failed to address this issue telling Plaintiff to contact Mental Health for a memory test. Mershon failed to fill Plaintiff's Flomax medication for several months causing Plaintiff a groin infection when he started back on his Flomax.

Mershon had a practice of doing things to the Plaintiff but not making proper notes in Plaintiffs medical records. Mershon was deliberate indifference to Plaintiffs serious medical needs that being Covid-19 a deadly infectious disease and it is cruel and unusual punishment for delaying and denying medical treatment to Plaintiff for nearly two (2) years. Plaintiff did have a serious medical condition that he was diagnosed with Covid-19, and Long term Covid-19 that required immediate treatment as well as long term treatment. Early on Plaintiff sustained a huge amount of weight loss of 25 lbs. Due to Mershons denials and failure to treat Plaintiff did result in further significant injury and the unnecessary and wanton infliction of pain and suffering and that Plaintiff continues to suffer today by Plaintiff being prescribed inhalers and taking pain medications for his respiratory issues. Mershon was fully aware of Plaintiffs underline conditions and was fully aware of Plaintiffs Covid-19 exposure and he either Knowingly or recklessly disregarded it. This caused Plaintiffs injuries.

See this case where Mershon was deliberate indifference to this inmate. Phillips v. Mershon, 2023 U.S. Dist. Lexis 110306 (June 23, 2023), Mershon failed to recommend any diagnostic tests or prescribe any type of pain medication. In Plaintiff's case it was N.P. Osburn that prescribed Plaintiffs inhalers and pain medications. Not Mershon.

163. Claim #2, Eighth Amendment, "Cruel and Unusual Punishment", and "deliberate indifference" claims against Defendant, Melissa Bagienski, Health Services Administrator Assistant, acting in her individual capacity, under color of

52.

State Law to deny Plaintiff of his constitutionally protected rights when she consciously disregarded a serious risk to Plaintiff when she delayed, denied and put up road blocks to any medical treatment to Plaintiff, falsify and lie on health care forms, and grievances in order to not provide any treatment to Plaintiff for his serious medical ailment of the deadly disease Covid-19. This is borderline criminal behavior by Bagienski from the time he filed his first health care form January 9, 2021, and all the way through early 2023, when Bagienski would resign for providing elderly inmates with expired Covid-19 medications. Bagienski falsified Plaintiffs health care form (HCF) #353765, by stating "while he was in isolation he was seen by a Nurse every day and the Nurse checked his vitals and temperature." To support Plaintiffs claim that Bagienski falsified this document, he has made multiple attempts in requesting the camera footage be preserved but has only hit road blocks. Bagienski made a statement on one of Plaintiffs health care forms that, "there is no medications for pain and that you need to let it run its course" This is such an outraglous statement. She made a qualified Doctors decision not to allow the Plaintiff to be seen by a qualified person. This was a denial of serious medical care, Bagienski's decision not have Plaintiff treated early on did lead to nearly two (2) years of long term damages and pain as well as a significant amount of weight loss to the Plaintiff of 25 lbs. Bagienski refused to respond to many of Plaintiffs health care forms. While in isolation which was January 13, 2022 through January 27, 2023, Bagienski responded to Plaintiffs health care form #353765, when he complained of being in pain and spitting up yellow mucus, she told

Plaintiff, to "just go 'ahead and order Tylenol off commissary".
This has to be criminal behavior. In May of 2022,
Bagienski refused to investigate why Plaintiff's Flomax medications
were never ordered which caused a 59 day delay before he was
to receive this important medication. She would also fail
to investigate Plaintiff's grievances and health care forms.
It is clear by the record that Defendant Bagienski was
"deliberate indifference" to Plaintiffs serious medical needs
that of Covid-19, a deadly infectious disease and it is cruel and
unusual punishment for Bagienski delaying and denying medical
treatment to Plaintiff for an entire year. Plaintiff did have
a serious medical condition that he was diagnosed with and
that required immediate treatment as well as long term treatment
in which because of her denials and failure to process
Plaintiffs health care forms so he could receive treatment
resulted in further significant injury and the unnecessary
and wanton infliction of pain and suffering that Plaintiff
continues to suffer today. Plaintiff continues to use inhalers
to breath better and Mobic for his respiratory pain.
Bagienski was fully aware of Plaintiffs Covid-19 exposure
and she either Knowingly or recklessly disregarded it.
Listed below are other cases that Bagienski had wrong doings.
  a. Daniels v. Reagle, 2022 U.S. Dist. Lexis 167533, No.
1:21-cv-02939-JPH-DML, Bagienski Failed to provide Medical treatment.
  b. Underwood v. Bagienski, 2022 U.S. Dist. Lexis 146171
    No. 1:21-cv-00684-TWP-DML, Bagienski fabricated hoarding
    allegations.
  c. Flame-Bay v. Mitchell, 2021 U.S. Dist. Lexis 99239
    No. 1:19-cv-04067-SEB-MJD, Bagienski Failed

and Retaliated against him for not issuing Tylenol
that was prescribed to him.

   d. Cobb v. Ivers, 2020 U.S. Dist Lexis 116410, No.
     1:18-cv-00790-TWP-MJD, Basienski refused to change
     his bandages or provide necessary medical supplies and
     made false allegations against Mr. Cobb.

   e. Cobb v. Rosell, 2018 U.S. Dist. Lexis 143395, No.
     1:18-cv-00790-TWP-DLP, Basienski retaliated against
     him by telling other inmates that he was a switch.

   f. Rowe v. Gibson, 798 F.3d 622, No.14-3316 (August 19,2015)
     Basienski denied him Zantac for thirty-three (33) days
     and she retaliated against him for filing Lawsuits.

164. Claim #3, Eighth Amendment, "deliberate indifference" and
"Cruel and unusual punishment" claims against Defendant,
HSA, Lisa Hamblen acting in her individual capacity, under
color of State Law to deny Plaintiff of his constitutionally
protected rights when she consciously disregarded a serious risk
to Plaintiff's health. Hamblens actions or inactions caused a delay
in Plaintiff's treatment and that delay exacerbated the
Plaintiff's injury of Covid-19. Plaintiff first submitted his
health care for his Covid-19 symptoms on January 9, 2022 and
four (4) days later he would be seen by Centurion medical
Staff for only a nasel swab in which came back positive.
Hamblen over the next two (2) years would delay, deny, put up
road blocks from Plaintiff getting medical care, she would falsify
medical records, charge Plaintiff for visits that either never
occured or should have never been charged for to begin with, she
failed to properly investigate grievances, health care forms and

request forms. At times she would hold onto Plaintiffs health care forms for weeks and while she was even on Leave. This causing huge delays and times denying serious medical care to Plaintiff. Hamblen even threatened Plaintiff with intimidation by stating she was going to File a "conduct report" on Plaintiff for abusing health care forms. Plaintiff only followed the health care policy. It was right after Plaintiff departed isolation on January 27, 2023, that Plaintiff had a conversation with Mental Health Professional, Mr. Troyer, about not receiving any medical care. Mr. Troyer told Plaintiff that he emailed HSA Hamblen. Hamblen did nothing to make sure Plaintiff had medical treatment. On June 18, 2022, Hamblen denied Plaintiff breathing treatments. It is clear by the record that Hamblen was "deliberate indifference" to Plaintiffs serious medical needs, that of Covid-19, a deadly infectious disease and it is "cruel and unusual punishment" for delaying, denying, failing to properly investigate grievances, health cares and request forms, charging Plaintiff for visits that he should have never been charged for and Hamblen's behavior has continued on for nearly two (2) years. Plaintiff did suffer a serious medical condition of Covid-19 that required immediate treatment as well as long term care in which Plaintiff also lost a significant amount of weight 25lbs. Hamblen's denials and failure to process his health care forms in a timely manner so he could receive treatment, resulted in further significant injury and the unnecessary and wanton infliction of pain and suffering that Plaintiff continues to suffer today by being on inhalers so he can breath better and pain medications mobic for the burning in his lungs. Hamblen was fully aware of Plaintiffs Covid-19 exposure and his underline serious medical conditions, and she either knowingly or

recklessly disregarded it. Listed below are other cases involving Hamblen.

  a. Warren v. Wexford of Ind. LLC., 2023 U.S. Dist. 57893
    No. 1:22-cv-00661-TWP-MJD, Gibson (now Hamblen)
    allowed and practiced customs or practices that caused
    Warren not to receive proper medical care.

  b. Rowe v. Gibson, 798 F.3d 622, No. 14-3316, (May 26, 2015),
    Gibson (now Hamblen) denied him Zantac for thirty-three
    (33) days.

  c. Peacher v. Hembeck, 2021 U.S. Dist. Lexis 240354
    No. 1:21-cv-03013-TWP-MJD, Hamblen failed to do her
    job by not processing Peachers healthcare forms.

165. Claim #4, Eighth Amendment, "deliberate indifference", and "Cruel and unusual punishment" claims against Defendant, Daniel Stasiak, Infectious Disease Controller, acting in her individual capacity, under color of state law to deny Plaintiff of his constitutionally protected rights when Stasiak consciously disregarded a serious risk to Plaintiff's health. Stasiak's actions or inactions caused a delay in Plaintiff's treatment and that delay and denial of treatment exacerbated the Plaintiff's injury of Covid-19. Stasiak was the Infectious Disease Controller and Nurse at the time Plaintiff submitted his first health care form on January 9, 2022 for having Covid-19 symptoms. Four (4) days later on January 13, 2022, Plaintiff would test positive for Covid-19 so Stasiak was fully aware of Plaintiff's issues because this is her area of expertise. Over the next nearly two (2) years Stasiak would delay, deny and put up road blocks from Plaintiff getting medical care and she did falsify Plaintiff's medical records. Stasiak failed

to follow Follow medical policies and procedures which caused Plaintiff's injuries. September 26, 2022, Plaintiff filed a grievance against Stasiak for falsifying Plaintiff's medical records in order to make herself and Centurion look good. This grievance pertained to Stasiak administering a Pulmonary Functioning Test in which Stasiak forced Plaintiff to blow into the device multiple times which exacerbated the pain in Plaintiff lungs. Stasiak claimed Plaintiff did not follow instructions. On February 16, 2022, the first time in nearly Forty (40) days since Plaintiff submitted his First health care form of Covid-19 symptoms did he finally see a Centurion Medical Professional, Nurse Practitioner, V. Osburn who did order Nebulizer treatments for Plaintiff. Vernon over the next few months ordered Nebulizer treatments and every time Stasiak would deny the treatment plan citing "O2 levels are not low." Stasiak fails to understand that O2 levels do not detect the Lung's burning. Stasiak would other times put up road blocks when she would cite, further evaluation needed. N.P. Osburn administered many PFT tests which did show low lung capacity levels thus, he ordered Nebulizer treatments. There would be no further evaluation needed. Stasiak choose to always override the Nurse Practitioners decision to not provide something that would have helped Plaintiff's pain in his lungs so that he could have had an opportunity to breath clearer without pain. This also shows Stasiaks lack of Covid-19 education as Hospitals administered Nebulizer treatments to people with Long term Covid-19. It is clear by the record that Defendant Stasiak was "deliberate indifference" to Plaintiff's serious medical needs that of Covid-19 a deadly infectious disease and is "cruel and unusual punishment" for the delay, denying serious

medical treatment such as Nebulizer treatments for nearly a year and denying and delaying Pulmonary Functioning Test for months. These medical procedures could have helped in deciding early on the medical treatments which could have prevented future harm such as Long term Covid-19. Plaintiff did suffer a very serious medical condition that he was diagnosed with Covid-19 in which he lost a significant amount of weight 25 lbs. This illness required immediate care as well as long term care. Stasiaki decision to deny treatment and prolong his PFT test resulted in further significant injury and the unnecessary and wanton infliction of pain and suffering that Plaintiff continues to suffer today by him being on inhalers to breath better and generic Mobic for the pain in his lungs. Stasiak was fully aware of Plaintiffs Covid-19 exposure as well as his underline health care issues and she knowingly or recklessly disregarded it. Stasiak was the final policy maker Disease control.

a. See Peacher v. Hembeck, 2021 U.S. Dist. Lexis 240354, No. 1:21-cv-03013-TWP-MJD, Stasiak discussed his medical condition to other no need to know medical staff.

b. See, Jackson v. Commissioner Carter, et al. No: 1:23-cv-00523-JPH-KMB, listing Stasiak as a Defendant in the Legionnaires outbreak case at PCF.


166. Claim #5, Eighth Amendment, "deliberate indifference" and "Cruel and unusual punishment" claims against Defendant, Registered Nurse, Kris Pryor acting in her individual capacity, under color of State Law to deny Plaintiff of his constitutionally protected rights when Pryor made a consciously decisions and disregarded a serious risk to Plaintiff's health. Pryor's

59.

actions or in actions caused a delay in Plaintiffs treatment and that delay exacerbated the Plaintiffs injury of Covid-19. Pryor was the head Nurse in charge of providing medical care to the Prisoners behind the Pendleton Correctional Facility, called IRT Complex, :, Plaintiff would be transferred to B-1 building in the IRT Complex after he tested positive for Covid-19 on January 13, 2022 and would remain in isolation til January 27, 2022. Pryor over the next fifteen (15) days was to check the inmates vitals and temperatures and she did not. Pryor would violate IDOC policies and CDC guidelines and Plaintiffs constitutional rights by denying any medical care to Plaintiff. After Plaintiff submitted Five (5) health care forms and begging for medical care through the Officers working in the unit did Pryor finally show up on January 25, 2022 this after Plaintiff was in isolation for thirteen (13) days and again January 26, 2022. Incident #1, occured January 25, 2022 as Hippa rules and medical Policies state that providing medical care you need to provide the patient with privacy. Pryor did raise her voice and appeared to be upset when she spoke to Plaintiff briefly through a 2 inch x 4 inch gap in the window seperating the housing unit and the Officers station where there were a couple of Officers and a couple of National Guards men, providing No privacy. Pryor expressed her unhappiness for the health cares Plaintiff submitted so she was fully aware of his complications and pain he was experiencing. After Plaintiff told her of his lungs burning and having issues breathing she said she would get him tylenol and X-rays. Pryor did neither. Incident #2, January 26, 2022, Plaintiff was called down to the entry way where Pryor was standing at the door.

when the door popped open, Pryor threw a box of hydrocordizone at the Plaintiff, smiled and quickly departed without giving Plaintiff a single Tylenol for his pain as she promised she would do. The hydrocordizone was Non-related to Covid-19 but was for the Foot infection that he received in December of 2021 during the Legionella outbreak. Plaintiff did file a grievance on Pryor's actions. (#139174) It is clear from the record that Defendant Pryor was "deliberate indifference" to Plaintiffs serious medical needs that of Covid-19, a deadly infectious disease and it is "cruel and unusual punishment" to delay and deny a serious medical treatment for fifteen (15) days as Pryor was the head Nurse in charge of the IRT complex which included B-1 building where Plaintiff was held in. Plaintiff did suffer a significant amount of weight 25 lbs. Plaintiff did require immediate treatment as well as long term care in which Pryor's denials and her lies of getting Tylenol and X-rays and failure to treat Plaintiff did result in further significant injury and the unnecessary and wanton inflition of pain and suffering that Plaintiff continues to suffer today by Plaintiff being on inhalers and taking mobic for his pain in his Lungs. Pryor was fully aware of Plaintiffs Covid-19 conditions because he was quarantined in Pryors building that she was overseeing and she either knowingly or recklessly disregarded all medical attention to Plaintiff.

a. See Reaves v. Wexford of Ind., LLC., 2023 U.S. Dist. Lexis 37518 No: 1:20-cv-02945-TWP-MPB, Pryor refused to treat his broken hand citing X-rays needed to be done in which that took several days.

b. See Hayes v. McKinney, 2021 U.S. Dist. Lexis 240351 No. 1:19-cv-04309-SEB-MPB, Pryor refused to treat a hand wound.

c. See Flame-Bey v. Mitchell, 2021 U.S. Dist. Lexis 99239, No. 1:19-cv-09067-SEB-MJD. Pryor retaliated against him when she told other medical staff not to trust him because he had been filing grievances against medical staff.

167. Claim #6. Eighth Amendment, "deliberate indifference" and "Cruel and unusual punishment" claims against Defendant, medical Director, Jason Carter, acting in his individual capacity, under color of state law to deny Plaintiff of his constitutionally protected rights when Carter would consult with Plaintiff around April 28, 2022 for his Covid-19 symptoms of lungs burning and shortness of breath. Carter did nothing to help Plaintiff and specifically stated, "there is nothing that I can do for you." It is clear by the record that Carter was "deliberate indifference" to Plaintiffs serious medical needs, that of Covid-19 symptoms in which is "Cruel and unusual punishment" when Carter denied any form of treatment to include not even offering Plaintiff a Tylenol pill for his reported pain. Carters denial was flat out failure to treat Plaintiff and did result in further significant injury and the unnecessary and wanton infliction of pain and suffering that Plaintiffs condition carries on through today. Carter was fully aware of Plaintiffs Covid-19 exposure because he had access to Plaintiffs medical records and the health care form for the reason of Plaintiffs visit. Carter either Knowingly or recklessly disregarded Plaintiffs serious medical conditions.

a. See Hawkins v. Centurion Health, 2023 U.S. Dist. Lexis 159067, U.S. Dist. Ct. S. Dist. of Ind. (September 8, 2023), No. 1:23-cv-00669-JPH-MJD. Carter delayed treatment by nine (9) months, and lied to inmate stating he would receive outside care for his stomach issues.

168. Claim #7, Eighth Amendment, "deliberate indifference" and "cruel and unusual punishment" claims against Defendant, Registered Nurse, Eunice Adeturo, acting in her individual capacity, under color of state law to deny Plaintiff of his constitutionally protected rights when Adeturo consciously disregarded a serious risk to Plaintiff's health. Adeturo's actions or in actions caused a delay in Plaintiff's treatment and that delay exacerbated the Plaintiffs injuries of Covid-19. After Plaintiff tested positive for Covid-19, he would be placed in the Covid-19 isolation unit, B-1 building of IRT, on January 13,2022. Incident #1, because of the serious pain Plaintiff was in, he complained to Defendant, Officer, Carter who told him she would get medical and to fill out a health care form. Two (2) days later on January 15, 2022, Defendant, Adeturo showed up but she said she was there only to pick up his health care form. Plaintiff explained to Adeturo that his lungs were burning, could not breath properly and was hurting all over. Adeturo told Plaintiff that she would return with Tylenol and will order X-rays. Neither of those things that Adeturo promised ever happened. Plaintiff filed a Indiana Tort Claim against the Defendants in March of 2022 Incident #2, June 3, 2022, Adeturo again was "deliberate indifference" to Plaintiff's serious medical condition when she retaliated against the Plaintiff when she refused to administer Plaintiff his nine (9) prozac capsules, instead conspired with Defendant, Officer, Garland to write up a false conduct report with false statement that Aderuro said Plaintiff made. Adeturo forced Plaintiff to go from his housing unit to medical office to retrieve his medications. After Adeturo gave Plaintiff his 9 capsules, he ingested them but then vomited because there was a strong odor of perfume on the capsules.

63.

Adeturos denrals and lies of offering Plaintiff Tylenol and X-rays and failure to treat Plaintiff on January 15, 2022 did result in further significant injury and the unnecessary and wanton infliction of pain and suffering to include a significant amount of weight loss of 25 lbs, in which he continues to suffer today by Plaintiff being on inhalers to breath better, and generic Mobic, for the pain in his lungs. Adeturo was fully aware of Plaintiffs Covid-19 condition because he personally told her of the pain he was in on January 15, 2022, and she promised to return with Tylenol and she would order X-rays. That never happened. Adeturo either knowingly or recklessly disregarded all medical attention to Plaintiff.

169. Claim # 8, Eighth Amendment, "deliberate indifference" and "Cruel and unusual punishment" claims against Defendant, Registered Nurse, Sheriff Agboola acting in her individual capacity, under color of State Law to deny Plaintiff of his constitutionally protected rights when Agboola consciously disregarded a serious risk to Plaintiff's treatment and that delay exacerbated the Plaintiffs injuries of Covid-19. June 13, 2022, did see Agboola for one of his health care forms outlining that he continues to have serious pain in his lungs and breathing issues. Agboola administered a Pulmonary Functioning test to Plaintiff. Agboola became very irate with the Plaintiff and had him blow several times and when he didn't blow the numbers that she thought he should be blowing she became "deliberate indifference" to Plaintiff when she refused to offer any treatment nor even a Tylenol for Plaintiffs reported pain. Agboola administered a PFT test that warranted immediate treatment. Agboola could have done what Nurse Practitioner

Osburn did on June 21, 2022, when Osburn ordered Nebulizer treatments three (3) times a day because Osburn examined the Plaintiff and diagnosed Plaintiff with suffering from Dyspnea and saw there was a significant weight loss of Plaintiff. Agbeolas denials of medical treatment to include failure to administer the basic Tylenol for Plaintiffs lung pain or even failing to note Plaintiffs PFT results in his medical records which would make Centurion Health look bad. Agbeolas denials did result in further significant injury and the unnecessary and wanton infliction of pain and suffering that Plaintiff continues to suffer today by Plaintiff being on inhalers to breath better and pain medications of mobic to help decrease the pain in his lungs. Agbeola was fully aware of Plaintiffs Covid-19 Conditions because he personally told her on June 13, 2022 of the pain he was in and she also had Plaintiffs health care form in her hands. Agbeola could have immediately referred Plaintiff to the Doctor, but she did not. Agbeola either Knowingly or Recklessly disregarded all medical attention to Plaintiff which caused his constitutional violations.

170. Claim #9, Eighth Amendment, "deliberate indifference" and "Cruel and unusual punishment" claims against Defendant, Registered Nurse, Abimbola Ehimare, acting in her individual capacity, under color of State Law to deny Plaintiff of his constitutionally protected rights. Ehimare consciously disregarded a serious risk to Plaintiff's health. Ehimare's actions or in actions caused a delay in Plaintiffs treatment and that delay exacerbated the Plaintiffs injuries of Covid-19. Plaintiff tested Positive for Covid-19 on January 13, 2022 and was placed in quarantine for 15 days.

March 3, 2022, Plaintiff saw Nurse Ehimare for his Annual and complained to her of his pain in his lungs and having breathing issues. Ehimare failed to intervene to provide any medical attention to include providing a Tylenol for the pain he told her he was in. Plaintiff would find out later that Ehimare falsified Plaintiff's medical records by spicifically stating that Plaintiff denies chest pain and shortness of breath and that he was cleared for Kitchen duties. Why would Ehimare falsify his medical records with statements that he was complaining about. Probably to make Centurion Health look good. Plaintiff never even had discussions of Kitchen duty with her. Ehimares denials and falsification of Plaintiffs medical records resulted in signifiant injury and the unnecessary and wanton infliction of pain and suffering to include a significant amount of weight loss of 25 lbs. Plaintiff continues to suffer today by using inhalers to breath better and mobic to help control the pain in his lungs. Ehimare was fully aware of Plaintiffs Covid-19 condition because he personally met with her on March 3, 2022, where he told her he was experiencing respiratory pain and breathing problems. Ehimare either Knowingly or recklessly disregarded all medical attention to Plaintiff, proving she was "deliberate indifference" to Plaintiff's medical care. In which resulted in Plaintiffs constitutional violations.

171. Claim #10, Eighth Amendment, "deliberate indifference" and "Cruel and unusual punishment," claims against, Registered Nurse, Defendant, Felicia Shelby acting in her individual capacity, under color of State Law to deny Plaintiff of his constitutionally protected rights

66.

when she consciously disregarded a serious risk to Plaintiffs treatment and that delay exacerbated the Plaintiffs injuries of Covid-19. Plaintiff tested positive for Covid-19 on January 13, 2022. Plaintiff continued to deal with the long term effect of Covid-19 til he saw the Defendant Shelby on September 6, 2022 who was there for treatment and to see the Doctor. Shelby was taking Plaintiffs vitals and weight, when she placed the device on his finger to measure his O2 levels. He observed the numbers going down from 97 to 95 and dropping quickly when Shelby yanked the device off Plaintiffs finger. Plaintiff noticed in his medical records that Shelby falsified the record when she put in a much higher number than what he saw. Those O2 numbers is what Defendant's Mershon and Stasiak go by in order to receive Nebulizer treatments. Because Shelby falsified his medical records, Plaintiff suffered substantial damages because Defendants Mershon and Stasiak would not approve Plaintiffs Nebulizer treatments with higher O2 levels. Shelby's decision to falsify Plaintiffs' medical records resulted in further significant injuries by having Plaintiffs Nebulizer treatments denied by Mershon, and Stasiak, and did unnecessary and wanton infliction of pain and suffering that even through today continues to suffer by continuing to use inhalers for better breathing and generic Mobic for the pain in his lungs. Shelby was fully aware of Plaintiffs Covid-19 condition because he personally told her on September 6, 2022, and she had Plaintiff's health care form in her hands. Shelby Knowingly or Recklessly disregarded medical attention to Plaintiff but she only had concerns to make Centurion look good. Her actions caused Plaintiffs constitutional violations.

172. Claim #11, Eighth Amendment, "deliberate indifference" and "cruel and unusual punishment" claims against Defendant, Centurion Health Services, LLC, acted in both its individual and official capacity under color of State Law to deny Plaintiff of his constitutionally protected rights by allowing employee's M.D. Mershon, M.D. Carter, former HSA Ass't Bagienski, HSA Hamblen, Nurse Stasiak, Nurse Pryor, Nurse Adeturo, Nurse Agboola, Nurse Ehimare and Nurse Shelby to refuse, delay and or to provide inadequate medical care and treatment for his Covid-19 pain issues and free from threats and or retaliation which caused Plaintiff the unnecessary delay and wanton infliction of pain and suffering. Centurion continued to deny Plaintiff's repeated requests for proper medical care and continues to refuse to arrange for treatment that will resolve the Plaintiff's Covid-19 pain issues. Centurion Health Services was deliberately indifferent to Plaintiffs serious medical needs. when they deprived Plaintiff of adequate care as a direct result of policies and customs and did so with conscious disregard of known risk.

173. Claim #12 First Amendment, "retaliation," Fourteenth Amendment, "due process rights violation", and State Claim of "Conspiracy" claims against the medical Defendant's, Mershon, Bagienski, Pryor, Hamblen Stasiak, Adeturo, Agboola, Ehimare and Shelby acted in their individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when all defendants were all involved in Plaintiffs "Retaliation" claims for denying, delaying serious medical treatment and falsifying Plaintiffs medical records from the time he filed his First health care form January 9, 2022, for suffering from Covid-19 symptoms. through current date. All Defendant's did "Conspire" and deny "due process rights" when they put up road blocks in preventing Plaintiff from

68.

receiving serious medical attention because of all the health care forms, request forms, grievance forms, tort claims that Plaintiff filed on all Defendants listed in this section. The Defendants also violated Plaintiffs Fourteeth Amendment, due process rights when they all made a decision to not treat Plaintiff for the first Forty (40) days of his Covid-19 illness and then delay, deny serious medical treatment which continues through the time of this Filing.

174. Claim #13. Eighth Amendment, "deliberate indifference" and "cruel and unusual punishment" claim against Defendants meeshon. Bagienski, Pryor, Adeturo, Hamblen, acted in their individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when they all failed to administer Plaintiffs psych medications (prozac) in which he is prescribed nine (9) a week. It was during the fifteen (15) days in isolation for testing positive for the infectious disease Covid-19 from January 13, 2022 through January 27, 2022, not a single capsule was ever administered. Plaintiff asked staff and through requests forms that he needed his medications. Nobody cared. This lack of interrupted medications caused Plaintiffs PTSD, Anxiety and depression to be exacerbated. Centurion Defendants should have had a procedure in place to make sure Plaintiff received his psych meds but they did not. This was cruel and unusual punishment to put Plaintiff through this on top of what else he was going through. The Defendants deliberate indifference caused Plaintiff the unnecessary denial and wanton infliction of pain and suffering

175. Claim #13, Monell Claim

A. Centurion Health Services failed to train their staff in how to deal with those that tested positive for Covid-19 from around January 13, 2022, when those to include Plaintiff were placed in another facility called the ERT Complex which is at the rear of the Pendleton Correctional Facility. There were no specific Covid-19 protocols for B-1 building which was named the Isolation Unit. Furthermore, Centurion had no set policies in how they should treat those in isolation to include vitals being checked daily as well as temperature checks. There were no policies in how to administer ones psych medications to those in B-1 building to include Plaintiff. Nobody was doing any follow-ups on the men thrown into these cells to include Plaintiff. The Head Nurse, Defendant Pryor was only seen the final two (2) days in isolation. This was also a widespread practice of not treating those exposed to Covid-19, and only placed in cells in B-1 building because NONE of the other nine (9) men quarantined were ever treated as well. This led to Plaintiff being injured.

B. Centurion Health had policies and procedures in dealing with infectious diseases but still allowed Plaintiff not to be seen for nearly forty (40) days. Centurion allowed it's staff to violate so many policies. Defendant Stasick failed on so many levels. They put one band aid over another as they were concerned about the Legionnaires disease outbreak and basically forgot about Covid-19 which caused the Plaintiff to suffer physically and emotionally.

C. Therefore, Plaintiff was deprived of his Federal Rights and that deprivation was caused by Centurion Health policies or

Customs as well as not having policies. If so then Plaintiff may have been seen early on instead of being forced to wait forty (40) days, everything documented and proper treatment could have been administered for his pain and suffering. Centurion violated their own policies such as when an inmate is to be seen once he submits health care forms. Plaintiff believes that the lack of care may have been contributed to cost cutting policies. This all contributed to the Plaintiff's short term and long term injuries. Furthermore, Defendant, HSA, Hamblen is the final policy maker as she oversees healthcare requests.

176. Claim #14. State Claim of "Negligence", against Medical Director, Defendant, John Mershon, acted in his individual capacity under color of State Law to deny Plaintiff of his constitutionally protected rights when Mershon breached his duty to apply proper standards of medical care of treating Plaintiff's Covid-19 symptoms and conditions while knowing Plaintiff has serious underline conditions in which Covid-19 may have attacked which did result in physical injuries and exacerbated Plaintiffs medical conditions physically and emotionally that he's had to endure for nearly 2 years. Centurion has a pattern of such behavior. See Exhibit 1, attached showing case law.

I, Plaintiff, Larry Warren, pro-se, do hereby swear or affirm under penalty for perjury that the above and foregoing statements are true and correct to the best of my personal knowledge and belief.

Respectfully submitted

Dated this 20th day of November, 2023

Larry Warren

Larry Warren #230853

Pendleton Correctional Fac.

4490 W. Reformatory Rd.

Indianapolis, IN 46064

71.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff request the following relief:

a. Declare that the acts and omissions described herein, the Defendants violated Plaintiffs rights under the constitution and Laws of the United States by all named Defendants in this Complaint.

b. For the Defendants to pay compensatory and punitive damages jointly and severally for the First Amendment "retaliation" violations.

c. For the Defendants to pay compensatory and punitive damages jointly and severally for the Eighth Amendment, "deliberate indifference" and "Cruel and unusual punishment" violations as well as "Conditions of confinement" violations.

d. For the Defendants to pay compensatory and punitive damages jointly and severally for the Fourteenth Amendment, "due process" violations

e. For the Defendants to pay compensatory and punitive damages jointly and severally for the State Law Claims of "IIED/Emotional Distress" "Supervisor Liability" "Negligence", "Failure to Protect" and "Conspiracy" violations.

f. For the Defendants to pay compensatory and punitive damages jointly and severally for "Monell" violations.

g. For an Injunctive Relief against the Defendants, Seek better living conditions. Seek outside Lung specialist.

h. For the Defendants to pay all Court costs, Filing fees, Attorney Fees, and any other fees and expenses incurred with this Civil Suit.

i. For all other relief that is just and proper in the promises to include all sums to be paid and determined by the trier of fact.

Dated: This 20th day of November, 2023,                  Larry Warren

Larry Warren, #230853

Pendleton Correctional Facility

4490 W. Reformatory Rd.

Pendleton, In 46064

72.

## CERTIFICATE OF SERVICE

I hereby, certify that on this 20th day of November, 2023 I electronically filed the foregoing with the Clerk of Courts using the Cm/ECF system which sent Notification of such filing to the following:

Indiana Department of Corrections
Counsel, Robert D. Bugher, (15714-49)
I. G. C. S., E334
302 W. Washington Street
Indianapolis, IN. 46204-7311
Phone 317-233-5620

Office of the Indiana Attorney General
I. G. C. S. 5th Floor
302 W. Washington, Street
Indianapolis, IN 46204-7311
Phone 317-232-7311

Centurion Health Services, LLC.
9245 N. meridians street, Suite 111
Indianapolis, IN. 46260

Dated on this 20th day of November 2023

Respectfully submitted
Larry Warren
Larry Warren, #230853, pro-se
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton, IN 46064